**UNITED STATES of America, Plaintiff,**

v.

**Edith Morales PADILLA, Defendant.**

**No. 95–494–CR–ATKINS.**

United States District Court,
S.D. Florida.

Nov. 27, 1995.

---

Kendall Coffey, United States Attorney by Jocelyn Woolworth, Assistant U.S. Attorney, Miami, Florida, for Plaintiff.

Kathleen Williams, Federal Public Defender by David Howard, Assistant Federal Public Defender, Miami, Florida, for Defendant.

### ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF POLYGRAPH EXAMINER

ATKINS, Senior District Judge.

THIS MATTER is before the Court on Plaintiff's Motion to Exclude Testimony of Polygraph Examiner. After careful review of the Motion, Defendant's Response, other filings in the case, and applicable caselaw, it is hereby

ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion to Exclude Testimony of Polygraph Examiner is DENIED;

(2) Counsel for Padilla shall, by December 1, turn over to Plaintiff all documents and information regarding the polygraph examination, the qualifications of Mr. Jurney, and

the name and qualifications of the translator used at the examination. Counsel for Padilla shall also submit by December 1, a sworn affidavit from the translator detailing her role in the examination, her qualifications, and whether or not she was sworn prior to taking part in the test incident to her federal certification.

## FACTS

Defendant, Edith Morales–Padilla (Padilla) is charged, in a two-count indictment, with importation of heroin (Count I), and possession with intent to distribute heroin (Count II). According to the facts before the Court, Padilla was arrested in Miami International Airport on June 25, 1995, after a substantial amount of heroin was discovered in her luggage. At the time, Padilla was accompanied by her two daughters, aged 11 and 21. After the heroin was discovered, Padilla was arrested and detained for questioning by customs officials.

After being fully advised of her *Miranda* rights, Padilla originally denied she had any knowledge about the heroin. Eventually, however, she confessed to the agents that she knew of the heroin's existence and had transported the heroin to the United States in exchange for money.

The circumstances surrounding this confession form the basis for the present motion, and are seemingly a large part of the defense. In particular, Padilla claims that while she was being questioned, her two daughters were simultaneously held in custody by customs officials. In response to her persistent denials concerning the heroin, Padilla claims that the Customs agents began to threaten that if she did not confess they would arrest her daughters. Padilla, fearing for the well-being of her daughters, confessed.

Not surprisingly, the Government hotly disputes this version of what transpired. The customs agents who questioned Padilla testified at a suppression hearing that they never threatened or coerced her into confess-

ing. At that hearing, Judge Graham ultimately ruled the confession admissible, relying in large part on the determination that the testimony of the customs agents was more credible than that of Padilla.[1]

Prior to the suppression hearing, Padilla was given a polygraph test by Mr. Kent C. Jurney, at which time she was asked the following relevant questions:

**Q.** Regarding whether the police threatened to arrest your daughters, do you intend to answer truthfully each question about that?

**A.** Yes.

**Q.** On June 25, 1995, when you gave that statement to the police, did you, at that time, believe your daughters would be arrested if you did not cooperate?

**A.** Yes.

**Q.** On June 25, 1995, did you make statements to the police because of threats made against your children?

**A.** Yes.

According to the Report of Mr. Jurney, he was able to determine that Padilla was truthful in her responses. As a result, Padilla now wishes to introduce the polygraph in support of her contention that the confession was coerced. The Government objects to the admissibility of the results in the motion now being considered.

## ADMISSIBILITY OF POLYGRAPH RESULTS

The governing law on the admissibility of polygraph testimony in this circuit is found in the Eleventh Circuit Court of Appeals' decision in *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir.1989) (*Piccinonna*). In that decision, the Court of Appeals erased this circuit's previous *per se* ban on the admissibility of polygraph results. In its place, the Court of Appeals adopted two tests for determining when, if ever, polygraph results are admissible at trial.

---

1. Judge Graham's ruling of admissibility is the law of the case, and this Court will not upset that determination. However, by ruling the confession admissible, Judge Graham did not, as Plain-

tiff has argued, make a final and binding determination that the confession was uncoerced. That is a question of fact, and must be left for the jury to determine.

The first test allows for the admissibility of polygraph results if the Parties stipulate to their admissibility. In this case, the Parties have been unable to stipulate and the first test is, therefore, inapplicable.

The second test allows for admissibility if a number of conditions are satisfied. In the Court of Appeals' own words:

Admission of polygraph evidence ... is subject to three preliminary conditions. First, the party planning to use the evidence at trial must provide adequate notice to the opposing party that the expert testimony will be offered. Second, polygraph expert testimony by a party will be admissible only if the opposing party was given reasonable opportunity to have its own polygraph expert administer a test covering substantially the same questions....

Finally, whether used to corroborate or impeach, the admissibility of the ... testimony will be governed by the Federal Rules of Evidence for the admissibility of corroboration or impeachment testimony. *Piccinonna*, 885 F.2d at 1536.

The Court of Appeals limited admission only to "impeach or corroborate" the testimony of a witness. There is no indication from the decision that admission is limited only to impeach or corroborate a *party's* testimony. Instead, the Court of Appeals opened the door to allow introduction for any witness.

In this case, Padilla, the party seeking to introduce testimony of the polygraph expert, has given Plaintiff adequate notice of that intention. Given that notice was provided in August, 1995, the Court must also conclude that Plaintiff has been given ample opportunity to conduct a test of its own. Thus, the first two "steps" of admissibility have certainly been met.

According to the procedures outlined in *Piccinonna*, the final determination that this Court must make, is whether the testimony is otherwise admissible under the *Federal Rules of Evidence* (*FRE*). In so doing, the Court understands, as best it can from the opinion, that it must make a number of determinations under the *FRE*.

■ First, as discussed above, the Court may only admit polygraph evidence for pur-poses of impeachment or corroboration of a witness' testimony. If the testimony is admissible for such purpose, the Court must then make a determination under *FRE* 403 whether the testimony's probative value is outweighed by its prejudicial effect. Finally, even if the Court is convinced that the evidence satisfies *FRE* 403, it must conduct a *FRE* 702 investigation to determine whether the expert testimony offered will assist the jury in determining a fact in issue.

## IMPEACHMENT OR CORROBORATION UNDER 608(a)

In this case, Padilla has made clear her intention to testify about the circumstances surrounding her allegedly coerced confession. For obvious reasons, Padilla expects that Plaintiff will, on cross, question her credibility and veracity. At that time, if it ever occurs, Padilla would then have a basis for offering the testimony of the polygraph expert in order to corroborate her testimony about the alleged coercion, under *FRE* 608(a). Under that rule, the introduction of extrinsic testimony is allowed, to attack or support a witness' "character for truthfulness," as long as such testimony only refers to that person's character for truthfulness and only after such character has been questioned.

Neither party in this case has attempted to introduce the polygraph testimony under the vehicle of *FRE* 608(a). In failing to seek admissibility under 608(a), it seems that both sides were swayed by Judge Gonzalez' opinion in the *Piccinonna* remand. *United States v. Piccinonna*, 729 F.Supp. 1336 (S.D.Fla.1990) (*Piccinonna II* ). In that case, Judge Gonzalez refused to allow the admission of a single polygraph result under 608(a).

Judge Gonzalez, in *Piccinonna II*, seems to have interpreted the Court of Appeals' mandate as manifesting two possible holdings. First, Judge Gonzalez considered whether the Court of Appeals may have intended to create an exception to the *FRE* for the admission of polygraph results. Judge Gonzalez rejected this interpretation—this Court believes appropriately. The court

next examined *FRE* 608, and determined that it would never allow for the admissibility of a single polygraph result under either prong of the rule.[2] With respect to 608(a), Judge Gonzalez held, in relevant excerpt:

> [t]hat a single polygraph testing session represents an inadequate foundation upon which an expert can base an opinion on the defendant's "character" for truthfulness or untruthfulness. It is inconceivable that anyone, expert or not, could form a valid, reliable, and admissible opinion as to the "character" of a witness based on nothing more than one single polygraph examination. Such testimony, when based on one single session, would be inadmissible as speculative and without any adequate foundations, and is thus likely to mislead any fact finder. *Piccinonna II,* 729 F.Supp. at 1338.

By ruling that *FRE* 608 automatically precludes the admissibility of a single polygraph result, Judge Gonzalez effectively stripped the Court of Appeals' decision of much of its meaning. With appropriate respect, this Court must nevertheless disagree with Judge Gonzalez, and even with the attorneys in this case, that one polygraph result can never satisfy a finding of admissibility under 608(a). This Court feels that, although Judge Gonzalez' interpretation of *FRE* 608 is certainly tenable,[3] the clear language of *Piccinonna* mandates a different result.

The Court of Appeals specifically declared that the introduction of polygraph testimony is limited to instances of impeachment or corroboration. By so limiting admissibility, the Court of Appeals understood that, in many circumstances, it was implicating Rule 608(a). The specific wording of the decision that "evidence that a witness passed *a polygraph examination,* used to corroborate that witness's in-court testimony, would not be admissible under Rule 608 unless or until the credibility of that witness were first attacked," *Piccinonna,* 885 F.2d at 1536, demonstrates that Judge Fay, in writing the opinion, considered and concluded that a single polygraph result could be enough to support testimony under 608(a). Since polygraph results are only admissible by experts, and 608(a) only allows for testimony as to the character of the witness, then Judge Fay must also have concluded that a polygraph expert, based on answers given by a witness in a polygraph examination, is suited to make determinations of truthful character.

An ability to offer testimony of truthful character based on a single event is not foreign to the *FRE.* Under *FRE* 609, a prior conviction may be admitted to impeach the credibility of a witness, only if that crime "involved dishonesty or false statement." Such convictions are allowed even if remote in time, up to ten (10) years, and having little or nothing to do with the issues of the current trial.[4]

In cases where polygraph examinations will be deemed relevant, the issues involved in the examination will be closely related to the exact issues at the trial. Certainly the admission of character evidence, based on an individual's truthful or untruthful answers to questions directly related to the dispute at trial, is equally as probative, and forms a more reliable basis for a determination of truthful character, than events which may have occurred years earlier, and may have little or nothing to do with events at present. Given this rationale, and given that Judge Fay has, with clear language, declared that *FRE* 608(a) allows for such testimony in certain circumstances, this Court decides to

---

2. For purposes of this Order, the Court does not disagree, or feel the need to discuss the implications of 608(b). Since that rule only applies to cross-examination, and given that polygraph results may only be introduced through expert testimony, it is difficult to understand how that rule could allow for the admissibility of polygraph results for impeachment or corroboration.

3. In fact, were it not for the existence of the Court of Appeals' decision, this Court would be inclined to follow the same course as Judge Gonzalez. In final analysis, it is a question of the weight to be given the single polygraph test, which, of course, is within the province of the jury.

4. The Court understands, of course, that bad character evidence is admissible because a separate rule has been promulgated granting admissibility. This analogy is only included to demonstrate that evidence of a person's character is admissible on the basis of only one particular act or statement.

interpret the decision in such a manner as to give effect to its plain language.

■ As such, this Court rules that once a witness' character for truthfulness or credibility has been attacked, a polygraph expert may introduce testimony as to that witness' character for truthfulness based on the results of a polygraph examination. Extending *FRE* 608(a) to encompass such testimony is necessary to give effect to the clear understanding of the Court of Appeals, and is not contrary to the purpose, scope or strictures of the *FRE* in general, or 608(a) in particular.

## ADMISSIBILITY UNDER 403

Although this Court is confident that the decision in *Piccinonna* allows for the admissibility of polygraph evidence under 608(a), there is no requirement that such evidence must be introduced under that rule. In fact, *Piccinonna* provides that as long as polygraph evidence is being admitted solely for impeachment or corroboration, a Court need only determine that the testimony is relevant, and that its probative value is not substantially outweighed by its prejudicial effect. In this case, Plaintiff has objected to the admissibility of the polygraph test specifically on these grounds. For reasons to be discussed below, this Court respectfully disagrees and finds the testimony admissible.

### Relevance

Plaintiff objects that the testimony is not relevant to a material fact at trial. The Court disagrees. According to *FRE* 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *FRE* 401. The expansive nature of *FRE* 401, and the nature of this case, demonstrates that the testimony is relevant and will not be ruled inadmissible on this basis.

It is true that Mr. Jurney did not specifically ask Padilla whether she had indeed knowingly imported heroin. Mr. Jurney also failed to ask Ms. Padilla whether her allegedly coerced confession was nevertheless true. Instead, the examination did nothing more than ask Padilla whether her confession was coerced by threats made against her children. The questions posed mainly explore Padilla's subjective belief that her daughters were threatened. The limited scope of questioning leads Plaintiff to conclude that the "testimony is irrelevant and not helpful."

Plaintiff is correct that had the polygraph examiner questioned Padilla about the truthfulness of her confession, or specifically asked her whether she had knowingly transported heroin into the United States, then the testimony would be *highly* relevant. However, merely because the polygraph examination did not specifically address all of the central issues of the case does not lead to the automatic conclusion that the testimony is *completely* irrelevant. Although it is clear that the polygraph result does not address every point in the case, and may indeed fail to have relevance to some of the most important issues at trial, this does not preclude its introduction.

The failure of the Defense to conduct a polygraph examination that covers all aspects of the Plaintiff's case is easily remedied— Plaintiff has the right to conduct its own test, and correct any deficiencies which it feels may have tainted the original test. Clearly, this is why the Court of Appeals ruled that unilateral examinations will only be admissible if the opposing party is given the opportunity to conduct its own examination.[5] It is fully admitted in this case that Plaintiff has had ample opportunity to conduct its own examination and has chosen not to do so.

Thus, the fact that Padilla's polygraph examination is only relevant to certain issues at trial does not preclude its introduction. In-

---

**5.** This argument should also answer Plaintiff's contentions that where a polygraph examination has been conducted without prior notice to the other party, it is *per se* inadmissible. Although this may indeed be the practice in other jurisdictions, the Eleventh Circuit, with clear and unambiguous language has created a test for admissibility of unilateral polygraph examinations. That test holds that as long as the opposing party is given an opportunity to conduct its own test, failure to provide prior notice will not result in automatic inadmissibility. This is the remedy the Court of Appeals envisioned—not preclusion.

stead, as should be obvious, the damage done to Padilla by having a "limited" polygraph is that it may only be introduced on the limited issues for which it is relevant. This is the appropriate "sanction," not preclusion.

■ In a case such as this, where the defendant is charged with serious crimes, and faces lengthy prison terms if convicted, the Court should not unduly interfere with defendant's choices in formulating her case. It is obviously Padilla's intention to introduce evidence to the jury that her confession was coerced. Although Judge Graham has previously ruled that the confession is admissible at trial, such a ruling does not preclude the jury from later determining what weight it wishes to give that statement. Given the damaging effect that the confession will obviously have on her case, Padilla has a right to introduce evidence tending to show that the confession should not be considered by the jury. The testimony of the polygraph examiner, used to corroborate testimony given by Padilla, or merely to impeach evidence offered by Plaintiff, is clearly relevant. The fact that the examination failed to address many of the central questions in this case is a subject that Plaintiff is uniquely empowered to show in the presentation of its own case, or in cross-examination.

*Probative Value vs. Prejudicial Effect*

■ Rule 403 mandates that relevant evidence may be excluded from trial if its probative value is substantially outweighed by its prejudicial effect. The Court admits, based on the discussion above, that the polygraph examination at issue here does not have substantial probative value. Nonetheless, Plaintiff has not put forward any argument which would lead the Court to conclude that even the limited probative value of the examination in question, is substantially outweighed by its prejudicial effect.

In this Court's opinion, the admission of the polygraph testimony would not result in confusion of the issues, unfair prejudice, waste of time, nor does it seem to unduly prejudice Plaintiff. In fact, the nature of this polygraph evidence is such that it does not directly affect Plaintiff's main contention— that Padilla knowingly smuggled heroin.

This polygraph has limited relevance to issues at trial, it consists of only one or two probative questions, and will not disrupt the trial *enough* to conclude that its prejudicial effect substantially outweighs its probative value.

### ADMISSIBILITY UNDER FRE 702.

In many ways, a determination under Rule 702, that an expert's testimony "will help the trier of fact to resolve the issues," is another way of determining that the probative value of the testimony to be offered is not substantially outweighed by its prejudicial effect. Nonetheless, the *FRE* and the decision in *Piccinonna* require the Court to make a determination that the polygraph examination was conducted with enough scientific accuracy to ensure that it may reliably aid the fact finder in determining an issue at trial.

■ Such a determination may require courts to make an initial determination that polygraph tests, in general, possess enough scientific rigor to form an acceptable basis for expert opinion. However, the decision in *Piccinonna* has already cleared that hurdle. By eradicating this circuit's *per se* ban on polygraph evidence, the Court of Appeals made an explicit determination that polygraph tests are sufficiently reliable to form the basis for expert testimony. Therefore, district courts have been left with the task of determining whether the specific examination has been conducted in accordance with acceptable principles so as to make *it* a sufficiently reliable basis for expert opinions in each case. To this end, the Court of Appeals has offered some guidelines that district courts may follow:

> the trial court may exclude polygraph expert testimony because 1) the polygraph examiner's qualifications are unacceptable; 2) the test procedure was unfairly prejudicial or the test was poorly administered; or 3) the questions were irrelevant or improper.

In this case, Plaintiff has objected on each of these grounds. The issue of relevance has been dealt with earlier and need not be read-

dressed. Plaintiff's other objections shall be addressed in turn.

### Qualifications of the Examiner

■ Plaintiff has raised objections to the qualifications of the polygraph examiner— Mr. Jurney. Specifically, Plaintiff has argued that Padilla has failed to provide it with enough information to raise valid objections to his qualifications. Nonetheless, in hearings before this Court, attorney for defendant has represented to this Court that Mr. Jurney has been certified as an expert on polygraphs in other federal courts. Further, the curriculum vitae for Mr. Jurney, as furnished by Padilla, shows that Mr. Jurney is a member in good standing of the Florida and American Polygraph Associations for the last 16–18 years. Further, Mr. Jurney was the past director of the Florida Association. These representations lead the Court to conclude that Mr. Jurney is sufficiently qualified to have conducted Padilla's test.

However, Plaintiff has requested that Padilla provide further information about Mr. Jurney. Specifically, Plaintiff requests that Padilla provide information concerning the number of polygraph examinations Mr. Jurney has conducted in the past, how many times he has testified at trial, and when and where he has previously been qualified to testify as an expert. Such information should be readily available to Padilla, and should be turned over with all due speed. Although the Court has concluded that Mr. Jurney possesses significant qualifications, failure of Padilla to turn over this information may force the Court to reconsider its finding. Further, if Plaintiff finds, based on this new information, that Mr. Jurney is unqualified, it shall notify the Court as soon as possible about the nature of its objections. Nevertheless, the Court wishes to make clear that, as the record stands now, there is sufficient basis for declaring Mr. Jurney qualified to testify as an expert concerning this polygraph examination.

### Qualifications of the Translator

■ Padilla's polygraph examination required the services of a translator. Plaintiff has objected to the translator on the ground that it has insufficient knowledge of that individual's qualifications to assess her.[6]

■ In hearings before this Court, attorney for Padilla has represented to the Court that the translator used in the examination, although a member of the Federal Public Defender's office, was federally certified to act as a translator. Given counsel's representation to this effect, the Court is satisfied that the translator was qualified and will not exclude the polygraph on this basis. Of course, there is nothing to prevent Plaintiff from calling the translator to the stand in order to substantiate that Mr. Jurney's translated copy of the polygraph questions and answers, as evidenced in the polygraph report, are as they purport to be.

The Court is aware of the specter of "conflict of interest" raised by the Federal Public Defenders Office's decision to use one of its own employees as a translator. However, since the Court accepts as true the fact that the translator is federally certified, and assumes that the translator was properly sworn prior to aiding in the administration of the examination, there is no basis to exclude the examination *solely* because a translator was used.

Nonetheless, the Court orders that counsel for Padilla turn over to Plaintiff the name and qualifications of the translator used in the examination. As further support for the reliability of the translator, the Court also requests that the translator submit a sworn affidavit outlining her role in the examination, including whether or not she was properly sworn before participating in the conduct of the polygraph test.

### Other

The Court notes that the rest of Plaintiff's objections amount to nothing more than claims that the test is improper because it does not address issues that Plaintiff consid-

---

6. Plaintiff seems to believe that the mere fact that a translator was used in the examination makes that test unreliable and inadmissible. There is nothing before the Court to support this assertion of scientific theory. In the end, the Court finds that as long as the translation was conducted properly, there is no reason to doubt the veracity of the test on that basis.

ers central to the case. In essence, these objections are nothing more then reiterations of relevancy objections which have been discussed above.

### CONCLUSION

In the end, this Court finds that as long as Padilla only attempts to introduce evidence of her polygraph examination to corroborate or impeach a witness' testimony at trial, the polygraph is admissible. Padilla may proceed under *FRE* 608(a) if her credibility is attacked at trial, however, there is no requirement that this rule be implicated. The polygraph is relevant, and its probative value is not substantially outweighed by its prejudicial effect. Finally, the Court finds that the test, based on the evidence before it today, was conducted with sufficient scientific rigor to conclude that it may assist the trier of fact in determining whether Padilla's confession was, in fact, induced through impermissible coercion.

DONE AND ORDERED.